BRIAN J. PANISH, California State Bar No. 116060
 panish@psblaw.com
PETER L. KAUFMAN, California State Bar No. 269297
 kaufman@psblaw.com
PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHER DISTRICT OF CALIFORNIA

### EUREKA DIVISION

| | |
|---|---|
| DONALD NICHOLS,<br><br>  Plaintiff,<br><br>v.<br><br>COVIDIEN LP,<br>COVIDIEN SALES LLC,<br>COVIDIEN HOLDING, INC.,<br>MEDTRONIC, INC.,<br>and DOES 1 through 10, inclusive,<br><br>  Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) STRICT PRODUCTS LIABILITY- MANUFACTURING DEFECT**<br>**(2) NEGLIGENCE**<br>**(3) STRICT PRODUCTS LIABILITY- FAILURE TO WARN**<br><br><br>**JURY TRIAL DEMANDED** |

COME NOW Plaintiff DONALD NICHOLS and files this Complaint against Defendants COVIDIEN, LP, COVIDIEN SALES LLC, COVIDIEN HOLDINGS, INC. and MEDTRONIC, INC., and DOES 1 through 10, inclusive ("Defendants"), the following.

**JURISDICTION AND VENUE**

1. This is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332 because it is a civil action between citizens of different states and citizens of a state and citizens of a foreign state, and the amount in controversy exceeds the sum or value of seventy-five

COMPLAINT

1 thousand dollars, exclusive of costs and interest.

2     2.    This Court has personal jurisdiction over Defendants because said Defendants have regularly and purposefully transacted business and engaged in commercial activities within the State of California and this District.

    3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a). A substantial portion of the events and omissions giving rise to this lawsuit occurred in this District, and the Court has personal jurisdiction over each of the parties as alleged through this complaint.

## INTRODUCTION AND SUMMARY OF ACTION

    4.    Plaintiff contends that Defendants designed, manufactured and marketed a defective class of surgical staplers that includes the Endo GIA, EEA, and other similar products. The FDA recently reported that between 2011 and 2018, there were approximately 110,000 reports -- including 412 reported deaths, nearly 12,000 reported severe injuries, and roughly 98,500 malfunctions -- related to issues with surgical staplers, including those designed, manufactured, and marketed by Defendants. These events, however, were largely hidden from public knowledge; the majority of the reports were not submitted to the Manufacturer and User Facility Device Experience (or "MAUDE"), which is a publicly-accessible database run by the FDA.[1]

    5.     Instead, the majority of the reports were submitted to the ASR Program, which had the effect of hiding the information and severity of the problems with the devices from surgeons and the public.

    6.    While the ASR Program enabled manufacturers of certain device types to submit quarterly summary reports of specific well-known and well-characterized events in lieu of individual reports of each event that tracks medical device failures, Defendants (and each of them) used the ASR program to keep the scope of injuries related to surgical staplers hidden from surgeons and their patients.

    7.    Plaintiff's injuries occurred during this time period. Since the discovery of this

---

[1] FDA Executive Summary Prepared for May 30, 2019 Meeting of the General and Plastic Surgery Devices Panel Reclassification of Surgical Staplers for Internal Use: https://www.fda.gov/media/126211/download.

2
COMPLAINT

conduct by Defendants, the staplers used on Plaintiff have been the subject of a recall and are being considered for reclassification from Class 1 devices (similar to an adhesive bandaid) to Class 2 devices.

8. Surgical staplers at issue in this action were designed, manufactured, and marketed by Defendants, and malfunctioned during Plaintiff's surgery. That malfunction caused Plaintiff to undergo subsequent surgeries and extensive medical treatment.

## PARTIES

9. Plaintiff Donald Nichols is a citizen of the State of California and resides in Eureka, Humboldt County, California.

10. Defendant Medtronic, Inc. is a Minnesota Corporation that has its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota. Medtronic is a medical device company involved in the manufacturing, marketing, packaging, labeling and sale of medical devices. At all times relevant to this action, Medtronic has conducted substantial business in California and regularly caused its products to be sold in California, including to Saint Joseph Hospital in Eureka, California. Plaintiff's causes of action also arise out of specific conduct occurring in the County of Humboldt, State of California. Therefore, personal jurisdiction is proper under the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

11. Covidien LLC, is a Delaware limited liability company with its principal place of business in Massachusetts. Covidien LLC, has a single member: Covidien LP, a Delaware Limited Partnership with its principal place of business in Massachusetts. Covidien LP, in turn, has one general partner: Covidien Holding, Inc., a Delaware corporation with its principal place of business in Massachusetts. Among its business activities, Covidien LLC is involved in the manufacture, distribution, sales, marketing, regulatory management, and services related to Covidien LLC medical products in the United States, and in California where it maintains a large sales operation selling Covidien LLC products all over the State of California, including the specific surgical

stapler involved in the subject incident. At all times relevant to this action, Covidien LLC has conducted substantial business in California. Plaintiff's causes of action arise out of a specific conduct committed in the County of Humboldt, State of California. Therefore, personal jurisdiction is proper under the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

12. Covidien LLC is registered to do business in the state of California and, thus, has consented to jurisdiction in the state. Furthermore, Covidien LLC is a wholly owned subsidiary of Medtronic, Inc., a Minnesota Corporation, and has systematic and continuous connections with the state of California operating as a subsidiary under the complete control of Medtronic, Inc. At all times relevant, Defendant Covidien LLC sold, marketed and distributed its products, including surgical staplers, throughout the United States, including the state of California.

13. Defendant Covidien Holding, Inc. is a Delaware Corporation with its principal place of business in Massachusetts. Defendant Covidien Holding, Inc. is registered to do business in the State of California and has consented to jurisdiction in the state. Furthermore, Covidien LLC is a wholly owned subsidiary of Medtronic, Inc., a Minnesota Corporation, and has systematic and continuous connections with the state of California operating as a subsidiary under the complete control of Medtronic, Inc.

14. At all times relevant, Defendant Covidien Holding, Inc. sold, marketed and distributed its products, including surgical staplers, throughout the United States, including the state of California.

15. In January 2015, Medtronic wholly acquired Covidien. From that point forward, Medtronic has been responsible for the actions of Covidien, and exercised control over Covidien's functions specific to the oversight of compliance with applicable safety standards relating to and including the Covidien Products sold in the United States. In that capacity, Medtronic committed tortious and wrongful acts or allowed those acts to occur, including the violation of numerous safety standards relating to device manufacturing, quality assurance/control, and conformance with

design and manufacturing specifications. Medtronic's misfeasance and malfeasance caused Plaintiff to suffer injury and damages.

16. Covidien and Medtronic (collectively referred to as "Defendants") are individually, jointly, and severally liable to Plaintiff for damages suffered by Plaintiff arising from Defendants' design, manufacturing, marketing, labeling, distribution, sale, and placement of the defective Covidien Products at issue in this suit. All acts were effectuated directly or indirectly through Defendants' respective agents, servants, employees, and/or owners, acting within the course and scope of their representative agencies, services, employments, and/or ownership.

17. The true names and capacities of DOES 1 through 10 are unknown to Plaintiff. Plaintiff is informed and believe and thereon allege that each of these Defendants are in some way liable for the events referred to in this Complaint and caused damage to Plaintiff. Plaintiff will amend this Complaint and insert the correct names and capacities of those Defendants when they are discovered.

18. At all times mentioned, each Defendant, including DOES 1 through 10, was the representative, agent, employee, joint venturer, or alter ego of each of the other defendants and in doing the things alleged herein was acting within the scope of its authority as such.

19. Covidien LP, Covidien Sales LLC, Covidien Holding, Inc., Medtronic, Inc., and DOES 1 through 10, inclusive, are collectively referred to herein as "Defendants."

**GENERAL ALLEGATIONS**

20. Defendants design, manufacture and sell End to End Anastomosis Stapler, a surgical stapler to be used by medical service providers in surgical procedures. The stapler comes in various models, which are generally denominated as "EEA" followed by a number. EEA staplers enable surgeons to create a secure anastomosis (connection between two internal bodily structures) within the body and form a seal.

21. Defendants designed, manufactured and sold defective EEA staplers, surgical staplers that were available in the market to be used in surgical procedures before, during and after

COMPLAINT

2017. These staplers frequently malfunctioned and were defective, compromising staple integrity and surgical procedures, with the potential to lead to patients' death or serious injuries when used by a surgeon, even as instructed by Defendants in the device user manual.

22. Defendant Covidien initiated a recall of EEA staplers on August 17, 2018. Specifically, the Covidien "identified the potential for a device to have device to have an incorrect tissue gap. Use of a device with an incorrect tissue gap may result in incomplete staple formation and/or the inability to remove the device from tissue following application potentially leading to bleeding, anastomotic leak or tissue trauma." https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=167339. The FDA determined the cause was "process design." Id.

23. Plaintiff Donald Nichols was admitted to Saint Joseph Hospital in Eureka, California on September 28, 2018, for treatment of rectal cancer.

24. On September 28, Mr. Nichols underwent an underwent low anterior resection. During this procedure, Mr. Nichols's surgeon used an EEA stapler to create an anastomosis. During the creation of the anastomosis, the EEA stapler misfired repeatedly. Although Mr. Nichols's surgeon properly operated the EEA stapler, the EEA stapler misfired repeatedly and, in the days following the surgery, the anastomosis began to leak.

25. On October 2, 2018, Mr. Nichols developed a fever. On October 2, a computerized tomography study of Mr. Nichols' abdomen showed a possible developing small bowel ileus.

26. An exploratory laparotomy performed on October 3, 2018, showed an anastomotic leak. Mr. Nichol's physicians performed a diverting loop colostomy, and attempted a transanal repair of the anastomotic leak. Postoperatively, he was treated with IV antibiotics and antifungals. Mr. Nichols' injuries required hospitalization until October 26, 2018.

27. As a result of the defective nature of the EEA stapler, Mr. Nichols suffered grievous injury requiring a prolonged hospitalization.

28. Plaintiff Donald Nichols remained in the hospital for nearly a month due to

1 complications from the stapler malfunction.

2     29.     In addition to a complicated and expensive hospital course, Plaintiff Donald Nichols now has massive scaring that would not have been present had the stapler not misfired and takedown had been completed in its intended closed fashion.

    30.     Plaintiff alleges, upon information and belief, that the specific stapler that failed during his initial September 2018 surgery was a model that was known by Defendants to frequently malfunction. In fact, that model was later subject to recall.

    31.     Plaintiff alleges that his stapler was among a class of staplers known by Defendants to malfunction or to contain defects, whether it was included specifically in a recall or not.

    32.     Manufacturers of medical devices such as Defendants must provide reports to MAUDE when they learn that any of their devices contributed to death or serious injury. An alternative reporting system (ASR) was established, though, for reporting well-known and well-characterized events on a summary basis. Here, Defendants misused that system. They did so to dilute reports, so that the injuries did not seem as prevalent; this included the non-reporting of events involving new and novel malfunctions that caused severe injury and would have subjected their staplers to recall or reclassification. In fact, these recalls occurred as soon as the issue was discovered and published in 2019. The staplers are being considered for re classification.

    33.     The ASR system further requires accurate reporting of deaths, injuries, and malfunctions. Upon information and belief, Defendants reported various injuries merely as "malfunctions" to avoid FDA scrutiny and attention and to forestall the chance that any of these reports would require public disclosure. Had these incidents been accurately reported, it is highly likely that public notice, FDA scrutiny, and product recalls would have preceded Plaintiff's surgery, and that the devices would have been appropriately recalled before being used on Plaintiff by her unsuspecting surgeons.

    34.     Defendants, and each of them, have manipulated the reporting systems in a way that ensured healthcare providers could not review the dangers posed by the products. Defendants also

often listed injuries as "malfunctions" to avoid attention that would have resulted in product recalls or serious questions about whether the devices were properly classified in the very low risk category. Instead, Defendants, and each of them, have utilized an alternative summary reporting program that is not publicly accessible.

35. By not reporting all stapler-related injuries on the publicly-available MAUDE database, Defendants have hidden the true risks of the using the devices from surgeons and their patients. Strikingly, in 2016, reports of only 84 stapler injuries or malfunctions were openly submitted, while nearly 10,000 "malfunctions" reports were included in the hidden database, according to the FDA.[2]

36. Despite the ASR system, a manufacturer was still required to report deaths related to its product's use in the public MAUDE data base. This public Database, shows that Medtronic has reported more than 250 deaths related to staplers or staples since 2001.[3] Despite this manifest knowledge of the dangers associated with its products, Medtronic nevertheless still used reporting exemptions to hide stapler-related reports from public view by reporting them to an inaccessible database through July 2017.[4] By doing so, Defendants intentionally concealed the many injuries caused by the use of its defective classes of surgical staplers. This concealment denied critical information concerning the safety of those products from surgeons, including the surgeons who performed Plaintiff's surgery (and patients like Plaintiff). Ultimately, Defendants continued to sell staplers to healthcare providers during this time period without disclosing serious risks of injury from use.

37. Based on the number of stapler-related injuries, in May 2019, the FDA proposed reclassifying surgical staplers for internal use from Class I to Class II (Special Controls).[5] Among

---

[2] *Hidden FDA Reports Detail Harm Caused By Scores Of Medical Devices,* https://khn.org/news/hidden-fda-database-medical-device-injuries-malfunctions/28.

[3] *Id.*

[4] *Id.*

[5] *FDA Executive Summary Prepared for the May 30, 2019 Meeting of the General and Plastic Surgery Devices Panel Reclassification of Surgical Staplers for Internal Use:* https://www.fda.gov/media/126211/download

8
COMPLAINT

other things, this required manufacturers, including Defendants, to publicly report all malfunctions or injuries related to the Covidien staple; device manufacturers, such as Coviden, are no longer able to use the reporting exemptions for injuries related to surgical staplers. Consequently, the number of public reports of deaths, injuries, and malfunctions skyrocketed from approximately 1,000 reports in 2015 to more than 11,000 reports in 2018.

38. While the reclassification brought transparency to the number of incidents involving the Defendants' products, it also revealed their concealment of the dangers posed by the products and demonstrated rank misrepresentations in the marketing of those products. Indeed, despite knowing that their staplers caused injuries due to malfunction, Defendants, and each of them, had undertaken to affirmatively represent and marketed their staplers were safe and effective. Defendants, and each of them, failed to include warnings regarding potential malfunctions that were known to them by virtue of, among other things, the reports that had theretofore been concealed in the ASR system. Defendants also failed to warn about the very risks described in the FDA publication.[6]

39. Defendants intentionally failed to: (1) provide warnings regarding the potential for their staplers to malfunction in the very manner that occurred during Plaintiff's surgery; (2) warn and inform surgeons of the potential for its staplers to malfunction in that manner; and (3) recall their defective products when Defendants knew their surgical staplers were prone to injurious malfunction. Through that conduct -- as well as the affirmative concealment of the known risks of the products described above -- Defendants engaged in willful, wanton, reckless, malicious behavior and/or exhibited a gross indifference to, and a callous disregard for human life, the safety and the rights of others, and more particularly, the rights, life and safety of the Plaintiff. That conduct was motivated by consideration of profit, financial advantage, monetary gain, economic aggrandizement, and cost avoidance, to the virtual exclusion of all other considerations.

---

[6] *Id.* at 9.

# FIRST CLAIM FOR RELIEF
# STRICT PRODUCTS LIABILITY MANUFACTURING DEFECT

**(Against All Defendants)**

40. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

41. A manufacturer of a medical device or instrument, such as a surgical stapler, who sells or otherwise distributes a defective device is subject to liability for harm to persons caused by the defect. A medical device is defective if at the time of sale, the device departs from its intended design, even though all possible care was exercised in the preparation and marketing of the product. Thus, a medical device is defective if at the time of sale, the device is manufactured in such a way that it poses harm and risk of injury when used by the intended consumer as the manufacturer intended.

42. A reasonably prudent manufacturer of those products would also know that a stapler failing to fire staples could cause serious injury because the procedure may need to be converted to an open procedure, and that even where it might cause only serious injury, the injured patient would require multiple hospitalizations, surgeries, and significant medical care to treat.

43. A reasonably prudent manufacture of surgical staplers would know that if it failed to exercise care in the manufacture of its product, that its product could malfunction and/or fail to properly and permanently close a surgical repaired site, causing anastomotic leak and other serious, related harm.

44. Defendants' stapler(s) were manufactured in such a way that deviated from their intended design and made those staplers unreasonably dangerous to the patient. Specifically, certain units among the stapler(s) manufactured by Defendants - including the stapler used in Plaintiff's surgery - were manufactured without a component that resulted in a failure to "fire" the staples; the failure to "fire" staples, in turn, caused injury to Mr. Nichols. The Defendants knew the specific staplers used on Plaintiff's surgical site contained a defect that caused it to fail to perform

10
COMPLAINT

the function it was intended to perform. Specifically, the failure to manufacture these staplers in compliance with their intended design resulted in a product that malfunctioned, causing an anastomotic leak, even after proper utilization by a surgeon. These manufacturing defects existed when the products left the manufacturers' control.

45.    The manufacturing defect to the EEA stapler used in Plaintiff's September 29, 2018 surgical procedure was a substantial factor in producing Plaintiff's severe injuries when the stapler misfired and failed to provide an effective anastomosis.

46.    The Plaintiff's physician used the EEA stapler as directed for its intended purpose.

47.    The EEA stapler used in Plaintiff's procedure had not been materially altered or modified prior to its use in Plaintiff.

48.    As a direct and proximate result of the exposure to the defective EEA stapler, Plaintiff suffered injuries and damages as described herein.

### SECOND CLAIM FOR RELIEF
### NEGLIGENCE
### (Against All Defendants)

49.    Plaintiff hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

50.    A Defendant who designs a medical device or instrument, such as surgical staplers, who sells or otherwise distributes a defective device is subject to liability for harm to persons caused by the design defect. A reasonably prudent manufacturer must design its products so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the harm when the product is put to its intended use or to any use that is unintended but is reasonably foreseeable. A medical device is defective if at the time of sale, the device is designed in such a way that it poses harm and risk of injury when used by the intended consumer in the manner the manufacturer has directed and designed.

51.    A reasonably prudent manufacturer of those products would also know that a stapler

failing to fire staples could cause serious injury because the procedure may need to be converted to an open procedure, and that even where it might cause only serious injury, the injured patient would require multiple hospitalizations, surgeries, and significant medical care to treat.

52. Plaintiff Donald Nichols was harmed by Defendants' defective surgical staplers, which were distributed, manufactured, and sold by Defendants. Defendants' surgical staplers contained a design defect that made the products unreasonably dangerous to patients. Specifically, there was a design or manufacturing defect that would result in a stapler failing to fire staples, despite proper utilization by a surgeon. That design defect in the staplers existed when those products left the manufacturer's control.

53. As a direct and proximate result of Defendants' design defects, Plaintiff has incurred losses and damages for personal injury, loss of use and enjoyment of life, the need for periodic medical examination and treatment, and economic losses, including additional medical expenses, and the expenditure of time and money. He will continue to incur losses and damages in the future.

54. Plaintiff alleges there were safer alternative designs of EEA staplers available to Defendants at the time the EEA stapler at issue in this case was sold. Those designs were reasonable, and economically and technologically feasible at the time the stapler at issue in this case was sold. Moreover, Plaintiff alleges that sutures are a safer alternative to surgical staplers in procedures such as that performed on him on September 29, 2018. Further evidence of the safer alternative designs will be presented by Plaintiff's expert witnesses.

55. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering, and will continue to suffer such damages in the future.

## THIRD CLAIM FOR RELIEF

## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

### (Against All Defendants)

56. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs,

as though fully set forth herein.

57. Pleading in the further alternative, a manufacturer must provide adequate warning of dangers inherent in the improper use of the product, and adequate instructions for the safe use of the product. The warning must be in a form which could reasonably be expected to catch the attention of, and be understood by, the ordinary user. Thus, a medical device is defective if, at the time of sale, the warnings and instructions provided with the device fail to provide adequate warnings of the dangers inherent in the product's proper use.

58. A reasonably prudent manufacturer of those products would also know that a stapler failing to fire staples could cause serious injury because the procedure may need to be converted to an open procedure, and that even where it might cause only serious injury, the injured patient would require multiple hospitalizations, surgeries, and significant medical care to treat.

59. Defendants knew that their surgical staplers posed a risk to patients when used as intended because certain units were manufactured without a component that resulted in a failure to form a staple line that resulted the stapler cutting tissue, but the staples failing to "fire". Despite knowing about this defect, Defendants failed to adequately warn potential surgeons or patients at the time they discovered, or should have discovered, those defects. Defendants were negligent for not providing sufficient notice or warnings of the risks associated with using the subject surgical staplers, including the risks associated with malfunction. Those inadequate warnings and instructions existed at the time the stapler(s) left the manufacturers' control.

60. As a direct and proximate result of Defendants' failure to warn, Plaintiff has incurred losses and damages for personal injury, loss of use and enjoyment of life, the need for periodic medical examination and treatment, and economic losses, including additional medical expenses, and the expenditure of time and money. He will continue to incur losses and damages in the future.

## **PUNITIVE DAMAGES ALLEGATIONS**
### **(Against All Defendants)**

61. Plaintiff hereby incorporates by reference all preceding paragraphs of this

13
COMPLAINT

Complaint as if fully set forth here.

62. On March 18, 2019, the US Food and Drug Administration (the "FDA") sent a "Letter to Health Care Providers" regarding "Safe Use of Surgical Staplers and Staples" ("FDA Letter"). (https://www.fda.gov/medical-devices/letters-health-careproviders/safe-use-surgical-staplers-and-staples-letter-health-care-providers).

63. The FDA Letter states that the FDA, between January 1, 2011, and March 31, 2018, received "over 41,000 individual medical device reports for surgical staplers and staples for internal use," which showed 366 deaths, over 9,000 serious injuries, and over 32,000 malfunctions.

64. The FDA Letter states that some of the "most commonly reported problems in these adverse event reports" included "opening of the staple line or malformation of staples" and "misfiring."

65. Medical device malfunctions are typically reported on the FDA's Manufacturer and User Facility Device Experience ("MAUDE") database. According to the MAUDE Website, the database houses medical device reports submitted to the FDA by mandatory reporters (manufacturers, importers and device user facilities) and voluntary reporters such as health care professionals, patients and consumers. (https://www.fda.gov/medical-devices/medical-device-safety/medical-device-reporting-mdr-how-report-medical-device-problems).

66. Specifically, MAUDE data represents reports of adverse events involving medical devices. An on-line search is available which allows you to search the CDRH's database information on medical devices which may have malfunctioned or caused a death or serious injury. MAUDE data is current through the end of the previous month.

67. Adverse Incident reports on the MAUDE database are important sources of information for doctors, device manufacturers, and hospitals. These reports allow each of those parties to educate themselves on potential pitfalls associated with devices before using the devices.

68. On March 8, 2019, Christina Jewett of Kaiser Health News published an article entitled, "Hidden FDA reports Detail Harm Caused by Scores of Medical Devices." The article

details how Surgical Stapler manufacturers had quietly been granted "a special 'exemption' allowing them to file reports of malfunctions in a database hidden from doctors and from public view."

69. According to the Kaiser Health News article by Christina Jewett, "Device maker Medtronic, which owns stapler maker Covidien, has been described as the market leader in surgical staplers. A company spokesman said that the firm has used reporting exemptions to file stapler-related reports through July 2017. Ethicon, the other major stapler maker, said it has not. The public database shows that Medtronic has reported more than 250 deaths related to staplers or staples since 2001."

70. Defendant's conduct described herein, when viewed objectively from the standpoint of Defendant at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Specifically, as shown above, Defendants intentionally hid malfunctions and surgical staplers from physicians, patients, and hospitals by reporting the vast majority of incidents to a hidden database. This prevented doctors from learning how to better deal with malfunctions and misfires during surgery, and made it appear to Defendants' customers that their staplers were safer than they actually were. Moreover, Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others. Thus, Plaintiff seeks punitive damages in an amount to be determined by the jury.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff demands judgment for the following:

1. Past and future medical and incidental expenses, according to proof;
2. Past and future loss of earnings and/or earning capacity, according to proof;
3. Past and future general damages, according to proof;
4. Punitive and exemplary damages in an amount to be determined at trial;
5. Prejudgment and post judgment interest;

6. Costs to bring this action; and

7. Such other and further relief as the court may deem just and proper.

DATED: September 30, 2020                          PANISH SHEA & BOYLE LLP

By: _____
Peter L. Kaufman
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all causes of action.

DATED: September 30, 2020                          PANISH SHEA & BOYLE LLP

By: _____
Peter L. Kaufman
Attorneys for Plaintiff